CABBBB, J.
I concur in the opinion just given by my brother Green, in all points.
BROOKE, E.
The points which have been argued, and on which the merits of this case depend, arise out of the exceptions taken at the trial. As to the first, I think the instruction of the court would have been wrong, even if he had correctly stated the import of Clarke’s evidence to the jury: but the judge’s statement of the evidence of that witness, was materially different from the evidence itself, unless, indeed, there be no difference (as the judge is presumed to have supposed) between the fact that Sybill was an indian, and the fact that she was descended from indians (as the witness stated) whether from the mother’s' or father’s side he was unable to say. Nor is that objection to the instruction obviated (as was argued by counsel) by the circumstance ’’that the evidence was in writing, and would be seen by the jury, who might correct the mistake of the judge. The jury, most probably, would take it for granted the judge was right, and that there was no difference between the evidence as stated by him, and the real evidence of the witness.
The next objection taken by the counsel for the defendant, was to the reading of the deposition of West, detailing the information he had heard from his mother. This was hearsay evidence; and his answer to the 4th interrogatory, particularly, ought to have been struck out, before the deposition was allowed to go to the jury. He said, he had heard his mother say, that Sybill’s mother was an indian, and that Sybil! herself was one, and was entitled to her freedom. When this cause was formerly before this court, it was decided, that hearsay evidence that Sybill was entitled to her freedom, was inadmissible; and if hearsay evidence that she was an indian is to have the same effect, as seems to be considered, it appears to me, that that was equally inadmissible. But it was inadmissible evidence, according to the settled rules of evidence. I concur, intirely, with the president of this court, in his remark in Shelton v. Barbour, which was repeated by judge Roane in Pegram v. Isabel, that though liberty is to be favored, the court cannot on that or any other favored subject, infringe the settled rules of law; and with lord Kenyon, in Rex v. Sriswell, 3 T. R. 721, that rules of evidence are not technical refinements, but founded on good sense, and the preservation of them is the first duty of judges. To admit hearsay evidence that Sybill was an indian, or that her mother was an indian, would, I think, violate the rule which excludes hearsay evidence, except in cases of pedigree, prescription, custom and (in this country) boundary. The rule admits it in those cases, not on the ground that it is the best evidence the nature of the case admits of, because that would let in hearsay evidence, in a great many cases in which it is always excluded; but on the ground, that those cases, in which hearsaj’ evidence is admitted, are '-not, in all respects, susceptible of direct and positive evidence of any degree. Nor do I think that there is any thing conclusively settled on this point, in the decisions of this court. I know, hearsay evidence has been silently permitted to go to juries, to prove the condition of a person, from whom pedigree has been deduced; but there is no adjudication of this court, that the settled rules of evidence are *477 not applicable to cases in which freedom is controverted. On the contrary, the departure from these rules of evidence in such cases, was strongly reprobated by Pendleton and Roane; by the remarks of the one, repeated by the other, before alluded to: nor have I been able to find, that the point now in question, was ever made and controverted. If it had been, I think it would have been decided here, as it was decided in the supreme court of the U. States, in the cases of Mima Queen v. Hepburn and Davis v. Wood: cases, which, though not authority here, are entitled to great respect. In the latter case, hearsay evidence was offered to prove, that Mary Davis, long dead, and from whom the plaintiffs had deduced their descent, was a white woman, born in Ringland, and that such was the general reputation in the neighbourhood where she resided: the court rejected this evidence, except so far as it was applicable to the pedigree of the plaintiffs; not because (as seems to be supposed) the court thought there were no specific facts in the chain of pedigree, but because the fact that Mary Davis was a white woman, born in Ejngland, was not part of the pedigree of the plaintiffs, but a specific fact susceptible of other proof than hearsay evidence.
But the instruction of the judge on this point, in the case before us, was wrong in another respect. It was calculated to leave the impression on the mind of the jury, that proof of the fact that Sybill was an indian, was equivalent to proof that she was free, without evidence that she had been illegally held in slavery; thereby putting it on the defendant to prove that she was legally held in slavery. Until the act of 1705, it is now well ascertained, that indians might be held *in slavery, as well as africans; and it is settled law, that a person of african race,held in slavery, and suing for freedom, must take upon himself the burden of proving his right to freedom; and e converso, in the case of a person of a white race, suing for freedom, the burden of proving him a slave, rests on the defendant; as, in the case of Hook v. Nanny Pagee, where the jury having found, on inspection, that the plaintiff was a white woman, it was thought sufficient, to establish her right to freedom, the defendant having offered no evidence of her descent from a slave race in the maternal line. But hearsay evidence, that any ancestor of her’s was an indian woman, if contested, would have been rejected. When the law permitted indians to be made staves (as Sybill’s mother and herself were held in slavery) that doctrine was as applicable to those of that race held in slavery, as to those of african race. The circumstance that some indians were only held to service until thirty-one, does not relieve the plaintiff from the burden of proving his female ancestor to have been illegally held in slavery, or that she was one of those who were held to service until thirty-one only. That she might have been so held to service, is a circumstance that weakens the presumption that she was legally held in slavery, applicable to those of african race; but it does not extinguish it. In making title to freedom, the claimant is exposed to the same burden that is imposed on those making title to property. In the latter case, a right to property is not conclusively made out by proof of descent from a particular ancestor, without full proof also, that the title was in that ancestor. Thus, in the case before us, if hearsay evidence was admissible to prove that Sybill was an indian held in slavery, the title of the plaintiff to freedom was not established, until he also proved, that she was illegally held in slavery, or was one of those indians held to a limited service only.
But there is another objection to this hearsay evidence. It seems to me well settled, that declarations made by a person, after a controversy begun, when the mind of the person ^making the declarations, is not in that even position, that qualifies him (though not under the influence of the sanction of an oath) to speak impartially, though such declarations are testified to by a competent witness, are intirely inadmissible. That this controversy existed at the time the declarations of Mrs. West to her son were made, I think is very clear. We know, that it was begun by the plaintiff’s mother in 1772: and though much time had elapsed before the declarations were made, there is no cause to believe, that, though the suit of the plaintiff’s mother went off the docket (how, we know not) the controversy was at an end. It is settled law, that proof that the controversy was known to the person making the declarations at the time, is not necessary to disqualify the persons to make them: and, I think, it is as well settled, that the continuance or the existence of the lis mota, at the time the declarations were made, is also unnecessary, if it appear that the controversy existed. The declarations, of Mrs. West bear internal evidence, that the controversy existed, and was known to> her, when she made the declarations. The witness in answer to the third interrogatory, said, his mother stated to him, that Sybill was free, and her family, in consequence of their indian descent from their-mother. She would have hardly said she was free, and assigned the reason why, unless she had been apprised of some controversy on that point. In answer to the fourth interrogatory, the witness said, his mother told him that Sybill’s mother was. an indian, and that Sybill was one herself, and was entitled to her freedom. These declarations are of the same import, and strongly imply a controversy at the time. But it is not to be inferred, from the circumstance that the suit of Sybill for freedom, in the general court, went off, that there was an end of this controversy. That, at the time the declarations of the mother were made to the witness there was no lis mota actually pending, was not material to exclude evidence of her declarations. In the case of the Berkeley peerage, it was held by a majority of the judges, that it was the existence of the controversy *at the time, and not the lis mota, that disqualified a person to make declarations that could be testified to, even as hearsay evidence as to pedigree. In that case, Mansfield, C. J., denied the- *478 rule to be, that the lis mota is necessary to exclude the evidence: the time of the declaration, in that case, he said, was the origin of the controversy, and not the lis mota; in which lord EJldon concurred. Wood, J., said, after a dispute has arisen, the presumptions in favour of declarations fail: to admit them would lead to the most dan'gerous consequences. The dispute, in the case before us, certainly had arisen, and existed, at the time Mrs. West made the declarations, to which her son testified: her mind was not in that even position, which would qualify her to make impartial declarations as if upon oath. The whole of her declarations ought therefore to have been expugned from the deposition of the witness.
But the court agree, on another point, that the judgment is to be reversed.
The judgment entered by this court, was to the following effect: The court is of opinion, that the circuit court erred, in intimating to the jury, that Clarke had stated in his evidence, “that he had always understood that Sybill was an Indian,” and that West had stated in his evidence, that his mother had said, “that Sybill had the appearance of an indian those witnesses having used no such expressions: and that the judgment is erroneous: therefore, it is considered, that the same be reversed &c. and it is ordered, that the verdict of the jury be set aside, and the cause be remanded to the circuit court, for a new trial to be had therein, on which no instruction giving any such intimation, is to be given.